UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

James Randall Sanders,

Plaintiff,

vs.                                    REPORT AND RECOMMENDATION

United States; Counselor Jack Bakker;
Correctional Officer Karen Berro;
and others unknown,

Defendants.         Civ. No. 04-3962 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.  For these purposes, the Plaintiff appears pro se, and the Defendants appear by Patricia R. Cangemi, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, be granted, and that the Plaintiff's Complaint be dismissed with prejudice.

## II. Factual Background

The Plaintiff, who is a prisoner at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"), commenced this action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §1346, alleging that the Defendants improperly seized and destroyed his legal materials, conspired to cover up the alleged wrongful conduct, and retaliated against him, following his attempts to obtain an administrative remedy for the alleged violations. The Plaintiff has since amended his Complaint to withdraw his conspiracy and retaliation claims.[1]

The events giving rise to the Plaintiff's Complaint occurred on October 15, 2003, when the Defendants Karen Berro ("Berro"), who is a Correctional Officer, and Jack Bakker ("Bakker"), who is a Correctional Counselor,  and other persons unknown to the Plaintiff, conducted a search of the Plaintiff's living quarters, pursuant to a "shakedown" search of the Plaintiff's entire unit.  The search was conducted at a time when the Plaintiff, and his roommates, were at work, and away from their room.  During the course of the search,  Berro and Bakker confiscated a number of

---

[1]The Plaintiff's original pleading also named Warden W.I. LeBlanc, Jr., Executive Assistant Jack Fox, and Lieutenant Jerry Parr, as Defendants in the suit. However, he subsequently dismissed his action against those individuals.

items, including four (4) notebooks from the Plaintiff's desk, which are alleged to have contained legal research compiled by the Plaintiff, over an approximate six (6) month time period. Purportedly, the purpose of the research was to aid his attorney in a direct appeal of his sentence and conviction, and to prepare to file a collateral attack on that sentence and conviction pursuant to Title 28 U.S.C. §2255. The Plaintiff alleges that the notebooks were clearly labeled as containing legal information, and that he had received permission to store the notebooks, on his desk, from Dan Cansino ("Cansino"), who is identified as the Unit Manager of the Plaintiff's unit.

When the Plaintiff returned to his living quarters, and recognized that his notebooks had been confiscated, he sought to recover them from Berro, but was advised by Berro that she had discarded the notebooks following the search.[2] The

---

[2]Both Berro and Bakker have submitted Affidavits, in which they maintain that they did not confiscate any notebooks containing legal materials and, in any event, none of the notebooks were discarded. <u>Affidavit of Karen Berro ("Berro Aff.")</u>, at ¶3; <u>Affidavit of Jack Bakker ("Bakker Aff.")</u>, at ¶3. Berro further avers that the Plaintiff was shown the notebooks that had been confiscated, and that he took two of those notebooks, but informed her that others were missing.

However, the Record also contains an Affidavit submitted by the Plaintiff, where he attests that four (4) notebooks containing his legal materials were confiscated during the search of his room; that he was informed that the notebooks were discarded;, and that he has been unable to obtain the return of those notebooks.

Plaintiff then informed Berro that the notebooks contained privileged legal information, to which Berro allegedly responded that the notebooks were not legal documents, and that she would not get in trouble for removing them from the Plaintiff's room.[3]

Over the next several days, the Plaintiff discussed the matter with Cansino, and

---

Docket No. 2, Exh. G at ¶¶6-9.  The Record also contains an Affidavit, which was prepared by the Plaintiff's roommate, William Eckels, who avers that he had observed the Plaintiff's legal materials on his desk prior to the search, and that he noticed that those materials were missing when he returned to the room following the search. Docket No. 44, Exh. AH at ¶¶5-6.  The Plaintiff's Exhibits also include memoranda, which were prepared by Berro and Cansino, and submitted to an individual, who is identified as M. Wolford, as part of the investigation into the Plaintiff's administrative complaint.  Berro's memorandum advises that she had informed the Plaintiff that she did not know what happened to his notebooks, and that they could have been thrown away.  Id., at Exh. AJ.  Cansino advised that he had spoken to Berro, who had informed him that she had indeed thrown away notebooks, but that she was unaware that the notebooks contained legal materials.  Id. at AK.  Cansino also stated that he had previously inventoried notebooks owned by the Plaintiff, which contained legal materials, although he could not remember whether those notebooks were clearly marked as legal.

Based on the conflicting evidence, we are satisfied that a reasonable Juror could conclude that Berro and Bakker did confiscate, and discard, notebooks containing legal materials from the Plaintiff during the search conducted on October 15, 2003. Accordingly, given the posture of the present Motion, we will assume that Berro and Bakker discarded the Plaintiff's legal notebooks.

[3]While Berro has attested that she did not make any such statements, we again are obligated, under the analytical regimen we must apply, to construe the facts in the Plaintiff's favor and, again, we will assume that Berro made the alleged statements.

with individuals who are identified as Lieutenant Clark ("Clark"), and Captain Castenga ("Castenga").  Those persons are alleged to have advised the Plaintiff that Berro should not have discarded notebooks containing legal materials, and that it was unlikely that they would be able to recover them.  Clark advised the Plaintiff to file an administrative grievance and, on October 19, 2003, the Plaintiff submitted an administrative grievance to W.I. LeBlanc ("LeBlanc"), who, at that time, was the Warden at FMC-Rochester.

Several days after the Plaintiff's notebooks were confiscated, the Plaintiff was contacted by Berro, who proceeded to show the Plaintiff several notebooks of the same type as the ones that were allegedly confiscated.  The Plaintiff examined the notebooks, but concluded that none were his.[4]

On October 22, 2003, Berro wrote the Plaintiff an incident report for having legal materials on his desk, rather than in his storage locker.  The Plaintiff asserts that the incident report constituted retaliation for his filing of an administrative grievance over the confiscation of his notebooks, while Berro maintains that the incident report

---

[4]Berro has averred that Clark gave her the notebooks to show to the Plaintiff, while the Plaintiff has averred that Clark informed him, on more than one occasion, that he had not provided Berro with any notebooks to show to the Plaintiff.  See, Docket No. 44, at Exh. AR.  We need not resolve this factual dispute, as it has no bearing on our ultimate determination of the merits of the Plaintiff's Complaint.

was justified because the Plaintiff's conduct violated Code 307 of Bureau of Prisons ("BOP") policy for "Refusing to Obey an Order," and Code 317 of BOP policy for "Failure to Follow Safety and Sanitation Regulations."  Declaration of Karen Berro ("Berro Decl."), at ¶5.  The Plaintiff contends that he had been granted explicit permission, from Cansino, to store his legal materials on his desk, because his legal locker had been confiscated during the search on October 15, 2003, and there was not enough room in his personal locker to store both his personal belongings, and his legal materials.  The Record suggests that the violations, which were charged by Berro, were informally resolved, as the incident report does not appear on the Plaintiff's disciplinary history.  Id., at ¶5 n. 1.  Shortly after this incident, the Plaintiff was transferred to a different unit.

In his effort to obtain documents pertaining to the incident of October 15, 2003, the Plaintiff made numerous requests to different administrators at FMC-Rochester for the release of such documents.  See Amended Complaint, at ¶¶28, 29; Docket No. 2, Exhs. O, R.  The Plaintiff also submitted three requests, pursuant to the Freedom of Information Act ("FOIA"), which sought the same documents.  Declaration of LeAnne D. Tufte ("Tufte Decl.") , at ¶8.  The first request sought "reports of interviews of B.O.P. staff here at FMC Rochester as part of the investigation

concerning my Request for Administrative Remedy (BP-9) filed by me on 10/19/03."
Docket No. 2, at Exh. P.[5]   A single document was found to be responsive to that
request, and was disclosed to the Plaintiff.

The Plaintiff's second FOIA request was slightly broader, in that it also sought
"any/all memorandums (memos) prepared by B.O.P. staff that in any way concern my
Request for Administrative Remedy filed by me on 10/19/03."  Id. at Exh. T.  This
request was initially denied because it was deemed duplicative of the first request.
The error was realized, however, and the request was reopened, although no further
documents were found to be responsive to that request.  See Tufte Decl., at Att. B.

The Plaintiff's third FOIA request was submitted on May 13, 2004, and sought
a complete copy of the file pertaining to his FTCA administrative claim, which had
been filed on October 20, 2003, and denied on February 27, 2004.  Id., at Att. C;
Declaration of Angela Buege ("Buege Decl."), at Att. D.  Twenty-four (24) documents
were disclosed pursuant to that request. Tufte Decl., at Att. C.

As stated, the Plaintiff's Complaint contains causes of action under both Bivens
and the FTCA.  The Bivens claim alleges that Berro, Bakker, and others unknown,

---

[5]The "Request for Administrative Remedy" referred to by the Plaintiff pertained
to the confiscation, and destruction of his legal notebooks, on October 15, 2003.

"did, with deliberate indifference, violate Plaintiff's constitutional right of access to the courts by improperly confiscating, seizing, and ultimately discarding Plaintiff's privileged legal materials on 10/15/03." Amended Complaint, at ¶41. The Plaintiff has also alleged that the Defendant United States is liable, under the FTCA, for the negligence of Berro, and Bakker, in breaching a known Regulation.

As to the Bivens claim, the Plaintiff has sought compensatory damages from Berro, Bakker, and others unknown, each, in the amount of $20,000.00, and punitive damages from each of the same individuals in the amount of $1,000,000.00. On the FTCA claim, the Plaintiff has sought the same damages amounts from the Defendant United States. He has also requested a declaration that he be allowed to be present during any searches of his living quarters, and that he be provided with a separate locker, with sufficient space to store all of his legal materials, for use in his living quarters.

## III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317,

327 (1986); <u>Duffy v. Wolle</u>, 123 F.3d 1026, 1040 (8th Cir. 1997), cert. denied, 523

U.S. 1137 (1998).  Summary Judgment is appropriate when we have viewed the facts,

and the inferences drawn from those facts, in a light most favorable to the nonmoving

party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs.</u>

<u>Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020,

1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th

Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be

resolved and the resolution will determine the outcome of the case, while a dispute is

"genuine" if the evidence is such that a reasonable Jury could return a verdict for the

nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

<u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003);

<u>Jenkins v. Southern Farm Bureau Casualty</u>, 307 F.3d 741, 744 (8th Cir. 2002); <u>Herring</u>

<u>v. Canada Life Assurance</u>, 207 F.3d 1026 (8th Cir. 2000).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B.    Legal Analysis.  The Defendants' Motion seeks Summary Judgment on both the Plaintiff's Bivens and FTCA claims, and each will be addressed in turn.

1.    The Plaintiff's Bivens Claim.  The Defendants seek Judgment as a matter of law on the following grounds:  1) the Plaintiff has failed to exhaust his

administrative remedies; 2) the Plaintiff has failed to establish that he suffered an actual injury, as a result of the alleged conduct; and 3) the Defendants are entitled to qualified immunity.  We commence our discussion with the Defendants' assertion that the Plaintiff has failed to exhaust his administrative remedies.

a.   <u>Failure to Exhaust Administrative Remedies</u>.  In the context of a <u>Bivens</u> claim, which is brought by a prisoner, a dispositive Motion must be granted when the prisoner has failed to exhaust his administrative remedies.  The Supreme Court has explained that "the doctrine of exhaustion of administrative remedies is one among related doctrines * * * that govern the timing of federal-court decisionmaking," and that the "rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts," "is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency."  <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992).[6]  Those

_____

[6]In actuality, the specific holding in <u>McCarthy v. Madigan</u>, 503 U.S. 140 (1992), is inapplicable to our determination, as that holding has been overruled by the amendments to the Prison Litigation Reform Act ("PLRA"), which  were enacted in 1996, and which made exhaustion mandatory, rather than discretionary, as it had been when the Supreme Court decided that case.  See, <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001); <u>Chelette v. Harris</u>, 229 F.3d 684, 687 (8th Cir. 2000).  Nonetheless, the Supreme Court's comments, in <u>McCarthy</u>, which concern the general purposes served by exhaustion, have not lost their legitimacy and force, and they continue to guide the Court on the "long * * * acknowledged" purposes of the exhaustion requirement.

purposes, necessarily, serve as the backdrop to our consideration of the exhaustion

requirement that Congress included in the Prison Litigation Reform Act ("PLRA"),

by providing as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. §1997e(a).

The Supreme Court has construed this provision broadly, and has held that the

doctrine requires prisoners to exhaust all available administrative processes, where

those processes have the authority to take some remedial action, even if they cannot

take the specific remedial action that is demanded by the prisoner.  See, Booth v.

Churner, 531 U.S. 956 (2001); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003)("If

exhaustion was not completed at the time of filing, dismissal is mandatory.").

As is the case with other Federal prisons, FMC-Rochester follows the sequential

grievance system enunciated in 28 C.F.R. §§542.10 through 542.19.   Under that

framework, when a prisoner brings a Complaint, he is first required to "present [the]

issue of concern informally to staff," who "attempt to informally resolve the issue."

28 C.F.R. §542.13(a).  If the inmate is not satisfied with that informal resolution, he

may then file a Request for Administrative Remedy with the Warden. See, 28 C.F.R.

§542.14(a).  "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form * * * is 20 calendar days following the date on which the basis for the Request occurred."  Id.

To appeal a Warden's decision, an inmate must file an appeal with the Regional Director "within 20 calendar days of the date the Warden signed the response."  28 C.F.R. §542.15(a).  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal" to the General or Central Office "within 30 calendar days of the date the Regional Director signed the response."  Id.  This is "the final administrative appeal."  Id.  Therefore, in order to have exhausted the administrative grievance procedure, an inmate must have followed the sequential process through to a determination by the General or Central Office.

In their Motion, the Defendants asserted that the Plaintiff had failed to exhaust his administrative remedies with respect to each and every claim that was set forth in his Complaint.  Specifically, the Defendants direct our attention to the Plaintiff's failure to exhaust his administrative remedies regarding his allegations of conspiracy, retaliation, and the failure of staff to provide him documentation regarding the investigation of the confiscation of his notebooks.  The Plaintiff has since amended his claim, such that it now is limited to his fully exhausted claim -- that Bakker, Berro,

and others unknown, confiscated and ultimately discarded his legal notebooks on October 15, 2003.  See, <u>Buege Decl.</u>, at ¶6.  Accordingly, we find that the Plaintiff has sufficiently exhausted his administrative remedies, and we proceed to the merits of his claim.

   b. <u>The Plaintiff's Constitutional Claim</u>.  In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the United States Supreme Court explicitly recognized that prisoners retain a constitutional right to meaningful access to the Courts.  The relevant inquiry, in determining whether prison authorities have impinged upon this right is "whether the prisoner has been given a 'reasonably adequate opportunity' to present his claim."  <u>Martin v. Tyson</u>, 845 F.2d 1451, 1456 (7th Cir. 1988), citing <u>Bounds v. Smith</u>, supra at 825.  This opportunity can be provided by several different means, and the assistance of counsel is generally sufficient to protect a prisoner's right to access, even where other restrictions have been imposed.  See <u>Lamp v. Iowa</u>, 122 F.3d 1100, 1105 (8th Cir. 1997)(holding that right of access to the Courts was satisfied where a prisoner was provided with an attorney and allowed to communicate with the attorney by postal mail); <u>Schrier v. Halford</u>, 60 F.3d 1309, 1313 (8th Cir. 1995)("The district court held, and we agree, that plaintiff's right to access is protected by the appointment of counsel.")[internal quotations omitted]; <u>Lloyd v. Corrections Corp.</u>

- 14 -

of America, 885 F. Supp. 221, 222 (W.D. Tenn. 1994)("An inmate's right of access to the court is fully protected if he is represented by counsel."); Buck v. Lake County Sheriff, 2003 WL 22118933 at *5 (N.D. Ill., September 11, 2003)(same).

Under Bounds, a prisoner's right of access can also be satisfied by insuring that he has access to basic legal research materials, or a legal assistance program, as well as basic clerical tools, in order that he may pursue legal recourse in the Courts. Id.; Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). Arguably, the right of access to the Courts includes a right to possess legal papers, such as those referred to in the Complaint now before us. See Cody v. Weber, 256 F.3d 764, 768 (8th Cir. 2001)("The taking of an inmate's legal papers can be a constitutional violation when it infringes on his right of access to the courts."), quoting Goff v. Nix, 113 F.3d 887, 892 (8th Cir. 1997); Tyler v. Woodson, 597 F.2d 643, 644 (8th Cir. 1979)[per curiam].

To prevail on an access to the Courts claim, however, a prisoner must demonstrate some "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); see also, Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)("In Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim"). There is no "abstract, freestanding right" of access to legal resources or legal papers; the inmate

must show that he has been deprived of some specific opportunity to defend himself, or advance a viable legal claim, in some particular action.  Lewis v. Casey, supra at 351; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996).  He must also identify some specific injury that arose from that lost opportunity.  Id.  As our Court of Appeals has observed:

> To state a claim that a law library or legal assistance program violates [the right of access], inmates must assert that they suffered an actual injury to pending or contemplated legal claims. [Lewis v.] Casey, 518 U.S. [343], 116 S.Ct. at 2180. Alleging theoretical inadequacies is insufficient. Id. Inmates must instead show, for example that a complaint they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a claim for actionable harm at all. Id.

Meyers v. Hundley, supra at 544.

Consequently, "in the absence of a systemic denial, a successful denial-of-access claim requires a showing of prejudice." Jones v. James, 38 F.3d 943, 945 (8th Cir. 1994), citing Berdella v. Delo, 972 F.2d 204, 210 (8th Cir. 1992).  Some Courts have further specified that, "when a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filings, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources." Ortloff v.

United States, 335 F.3d 652, 656 (7th Cir. 2003); citing Martin v. Davies, 917 F.2d

336, 341 (7th Cir. 1990); See Spurlock v. Simmons, 88 F. Supp.2d 1189, 1193 (D.

Kan. 2000).

While it is not explicitly stated, a review of the case law from this Circuit

suggests that a similar showing is required to establish a cognizable injury in an access

to the Courts claim.  The Court's analysis, in Cody v. Weber, supra, is particularly

instructive, as the plaintiff, there, presented two claims based on his right of access to

the Courts, only one of which was found to be supported by a sufficient showing of

injury.  Specifically, the Court found that the plaintiff had established an injury, where

he alleged that prison officials read his legal papers, and thereby gained an unfair

advantage in defending themselves against specifically identified lawsuits that he had

brought against them, which challenged the conditions of his confinement.  Id., at 768,

769.  On the other hand, the Court held that the plaintiff had failed to establish an

actual injury where he was not allowed access to his research concerning claims that

were mentioned as possible sources of relief, but to which the plaintiff had not

asserted any basis or plan to seek such relief.  Id. at 770.

Other precedent, from our Circuit, is in substantial accord that, in order to

establish an actual injury, a plaintiff must be able to show that the alleged conduct

prejudiced his ability to bring a meritorious claim, or to prosecute or defend a pending claim.  See, Goff v. Nix, supra at 892 (prisoner who lost legal papers critical to his post conviction proceedings as a result of prison policy established a cognizable injury); Tyler v. Woodson, supra at 644 (prisoner who alleged that his ability to defend himself at Trial, on three pending criminal matters, was hindered by the confiscation and destruction of materials that were compiled in preparation for those matters, sufficiently stated claim for the denial of access to the Courts);  Smith v. Groose, 1993 WL 498787 (8th Cir., December 7, 1993)(prisoner who alleged that the destruction of his trial transcript prejudiced his ability to seek post conviction relief, failed to establish injury where there was "no showing that the alleged taking in fact obstructed him from presenting any particular claim in a [State post-conviction proceeding] or federal habeas petition."); see also, Johnson v. State of Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)("[I]n the context of an access-to-courts claim, in order to satisfy the injury-in-fact requirement, a plaintiff 'must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."), quoting Lewis v. Casey, supra at 353.

Here, the Plaintiff has sufficiently satisfied his burden of establishing a genuine issue as to whether the notebooks containing the Plaintiff's legal research were

confiscated from the Plaintiff, and never returned.  Thus, the Defendants' conduct may be actionable if it, in fact, resulted in a cognizable injury to the Plaintiff's right of access to the courts.  See, <u>Cody v. Weber</u>, supra at 769; <u>Goff v. Nix</u>, supra at 892; <u>Tyler v. Woodson</u>, supra at 644.

The Plaintiff has urged that such an injury has been established because the confiscated notebooks contained legal research gathered over the course of approximately six (6) months, to aid his appeal of his criminal conviction and sentence, and to prepare a collateral attack on his conviction pursuant to Title 28 U.S.C. §2255.  The Plaintiff further avers that he has been "intimately involved with researching and preparing his case for trial, sentencing, and appeal," and that the information contained in the notebooks was irreplaceable.  <u>Docket No. 2</u>, Exh. G at ¶¶4, 10.

Despite those averments, the Plaintiff has failed to establish that the confiscation, and destruction, of his notebooks resulted in a cognizable injury, under the standards articulated in <u>Lewis</u>.  As an initial matter, the Record reflects that the Plaintiff is presently represented by counsel in the conduct of his direct appeal.  See <u>Docket No. 2</u>, Exh. G at ¶3.  As such, he cannot claim that the denial of access to his personal legal research deprived him of access to the courts for that appeal.  See,

Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir. 1983)(prisoner was not denied access to court where he "was represented by court-appointed counsel during the complained-of period, and there [was] no claim that his counsel was impaired in her access to the courts on his behalf."); Buck v. Lake County Sheriff, supra at 5 ("Because the plaintiff had a defense attorney capable of performing his or her own legal research, the plaintiff cannot claim that a denial of access to the courts affected his criminal trial.").

Moreover, while the Plaintiff has alleged that the confiscated notebooks also contained research that was conducted in order to collaterally attack his conviction under Section 2255, his allegations, and averments, are notably devoid of any contention that the Defendants' conduct has prejudiced his ability to present that claim to the Court.  Specifically, there has been no showing that the Plaintiff's Section 2255 Motion was pending at the time of the alleged confiscation, or that the alleged confiscation of his notebooks caused him to forfeit that action.  While the Plaintiff may consider it necessary to conduct additional research, prior to the filing of his Section 2255 Motion, he has failed to establish that the time necessary to conduct such research would deprive, rather than delay, the filing of the Motion.  Accordingly, the Plaintiff has failed to establish a cognizable injury, and therefore, we recommend that

- 20 -

the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment be granted, with respect to the Plaintiff's <u>Bivens</u> claim.[7]

   2. <u>The Plaintiff's FTCA Claim</u>. As a sovereign power, the United States may be sued only to the extent that it has consented to suit by Statute. <u>United States Dep't of Energy v. Ohio</u>, 503 U.S. 607, 615 (1992); <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" <u>Brown v. United States</u>, 151 F.3d 800, 803 (8th Cir. 1998), quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); see also, <u>United States v. Mottaz</u>, 476 U.S. 834, 841 (1986)("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."), citing <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).

  In granting its consent to be sued, the United States may attach such conditions, and limitations, as it deems proper, and strict compliance with those conditions is an

---

[7]At least one Court within this Circuit has concluded that prison officials, who confiscated and destroyed an inmate's Trial transcript during the pendency of his post conviction proceedings, were not entitled to qualified immunity because the law of access to the Courts was clearly established. See, <u>Smith v. Groose</u>, 1993 WL 498787 at *2 (8th Cir., December 7, 1993). Since we have found that the Plaintiff's access to the Courts claim necessarily fails, for the lack of a cognizable injury, we need not determine whether the Defendants are entitled to qualified immunity.

absolute requirement.  <u>Bellecourt v. United States</u>, 994 F.2d 427, 430 (8th Cir. 1993),

cert. denied, 510 U.S. 1109 (1994).  Waivers of sovereign immunity must be strictly

construed in favor of the sovereign, and may not be enlarged beyond what the

language of the waiver requires.  <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30,

34 (1992); see also, <u>Bowen v. City of New York</u>, 476 U.S. 467, 479 (1986); <u>Block v.

North Dakota</u>, 461 U.S. 273, 287 (1983).

One such waiver is the FTCA, <u>Title 28 U.S.C. §§1346(b), 2671-2680</u>, which

allows a party to maintain an action, in Federal Court, for money damages arising

from a "personal injury or death caused by the negligent or wrongful act or omission

of any employee of the Government while acting within the scope of his office of

employment * * *."  <u>Title 28 U.S.C. §1346(b)</u>.  The waiver is further limited by a

series of exceptions to the Act's coverage, which are enumerated in Section 2680.  As

pertinent to the Plaintiff's claim, Section 2680(c) excepts the following from the

waiver afforded by the FTCA:

> Any claim arising in respect of the assessment or collection
> of any tax or customs duty, <u>or the detention of any goods or
> merchandise by</u> any officer of customs or excise or <u>any
> other law enforcement officer</u>.

<u>Title 28 U.S.C. §2860(c)</u> [emphasis added].

- 22 -

In order to fall within the ambit of Section 2860(c):[8]  1) the Plaintiff's claim must have arisen from a "detention" of that which was lost or destroyed; 2) the allegedly confiscated and destroyed objects must have been "goods or merchandise;" 3) the detention must have been conducted by "law enforcement officers;" and 4) the "detention" itself must have been of a kind envisioned by the Statute.  See, Farmer v. Jacobsen, 1998 WL 957237 at *3 (D. Minn., November 30, 1998).

Here, we find that each of the Section 2860(c) requirements have been satisfied. Plainly, the Plaintiff's claim arose out of a detention of his legal notebooks, see Kosak v. United States, 465 U.S. 848, 854 (1983)(interpreting the phrase "arising in respect of" to mean any claim "arising out of" the detention of goods and merchandise); Gasho v. United States, 39 F.3d 1420, 1433 (9th Cir. 1994), cert. denied, 515 U.S. 1144 (1995)(interpreting Section 2680(c) as applying to intentional torts, if they arise out of acts of detention), and we have no doubt that the notebooks, which were allegedly confiscated, were "goods and merchandise," irrespective of their contents.

_____

[8]While the Government has raised sovereign immunity as a ground for Summary Judgment, it has confined its argument to the constitutional, rather than tortious nature of the Plaintiff's action, and has not argued for the application of Section 2860(c).  Nevertheless, we address Section 2860(c), since the retention of sovereign immunity would deprive the Court of jurisdiction to consider the Plaintiff's FTCA claim, and we have a fundamental obligation to ascertain our authority to address the issues presented.

- 23 -

See, <u>Manning v. Booth</u>, 2005 WL 1200122 at *4-5 (D. Md., May 20, 2005)(Court did not have subject matter jurisdiction for FTCA claim brought by prisoner whose legal materials were allegedly confiscated and destroyed after a search of his cell); <u>Greer v. United States</u>, 2002 WL 31643018 (D. Kan., November 12, 2002)("The court determines that Plaintiff's legal materials fall within the definition of 'goods'"); see also, <u>United States v. Bien</u>, 214 F.3d 408, 411 (3rd Cir. 2000)(alleged improper destruction of "important papers" was not actionable because detention of papers fell within Section 2680(c)); cf., <u>Farmer v. Jacobsen</u>, supra at *3 (citing <u>Blacks Law Dictionary</u> to conclude that items such as food, and the Georgetown Law Journal, were "goods and merchandise").

As to whether Bakker and Berro were "law enforcement officers," for the purpose of Section 2680(c), we are satisfied that our holdings in <u>Farmer v. Jacobsen</u>, supra at *4, and <u>Hernendez . v. United States</u>, 1995 WL 692982 at *6 (D. Minn., September 28, 1995) -- that BOP officials are law enforcement officers for the purposes of Section 2680(c) -- are consistent with the current state of the law in this Circuit, as well as the majority of Circuits that have addressed the issue.  See <u>Parmelee v. Carlson</u>, 1996 WL 64701, at *1 (8th Cir., February 15, 1996); <u>Bramwell v. United States Bureau of Prisons</u>, 348 F.3d 804, 807 (9th Cir. 2003); <u>Chapa v. United States</u>

Department of Justice, 339 F.3d 388, 390 (5th Cir. 2003); Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002); Crawford v. United States Department of Justice, 123 F. Supp.2d 1012, 1014 (S.D. Miss. 2000); Manning v. Booth, supra at 5;[9] see also, Cheney v. United States, 972 F.2d 247, 248 (8th Cir. 1992)(Agents of Drug Enforcement Agency were "law enforcement officers" under Section 2680(c)). Accordingly, we are satisfied that Bakker and Berro, as BOP officials, are "law enforcement officers" under Section 2680(c).

Lastly, having determined that the Plaintiff's claim arose from the detention of his goods or merchandise, by law enforcement officers, we must now consider whether the goods and merchandise were, in fact, "detained" within the meaning of Section 2680©). We conclude that they were. Of course, some form of "detention" was involved here, as the Plaintiff's notebooks were assertedly removed from his cell. Given the absence of any statutory definition of "detention," we note that, in

_____

[9]As recognized by the Court, in Bramwell v. United States Bureau of Prisons, 348 F.3d 804 (9th Cir. 2003), a minority of Circuits have construed Section 2680©) as only applying to law enforcement officers performing customs or excise functions. See Ortloff v. United States, 335 F.3d 652, 660 (7th Cir. 2003); see also, Bazuaye v. United States, 83 F.3d 482, 486 (D.C. Cir. 1996); Kurinsky v. United States, 33 F.3d 594, 598 (6th Cir. 1994), cert. denied, 518 U.S. 1042 (1995). However, the reasoning of the minority Courts is inconsistent with the law of this Circuit, as set forth in Cheney v. United States, 972 F.2d 247, 248 (8th Cir. 1992).

Goodman v. United States, 987 F.2d 550 (8th Cir. 1993), our Court of Appeals addressed the scope of the term "detention," as it appears in Section 2680(c).   There, the Court held that, for purposes of Section 2680(c), the term "detention" includes routine customs inspections, which are not limited to a detention pursuant to a Search Warrant.   Goodman v. United States, supra at 551-52.

While Goodman dealt specifically with detention, under the auspices of the United States Custom Service, we see no basis to infer that the Court intended to limit the scope of this statutory construction to detention by Customs agents, particularly since the Court has construed the phrase "law enforcement officer" so expansively in the context of Section 2680(c).   In Parmelee v. Carlson, supra, our Court of Appeals expressly held that items lost during a prison inventory were subject to "detention," within the ambit of Section 2680(c)'s exception to the waiver of sovereign immunity. The Parmelee holding is consistent with the case law from other jurisdictions, which have addressed the meaning of "detention" in the context of items confiscated during the search of a prisoner's cell.   See Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1206, 1213 (10th Cir. 2003)(Section 2680(c) applies to an inmate who alleged that goods were removed from his cell while he had been placed in segregation); Corbeil v. United States, 81 Fed. Appx, 662, 662, 2003 WL 22701229 at *1 (9th Cir.,

November 17, 2003)(property confiscated during a search of plaintiff's cell was "detained" for the purposes of Section 2680(c)); <u>Manning v. Booth</u>, supra at *4-5.

Consequently, we agree with the District Court for the District of Maryland, which found Section 2680(c) applicable to an FTCA claim brought under closely analogous circumstances, reasoning as follows:

> In light of the foregoing, this Court finds the Plaintiff's tort complaint must be dismissed for lack of subject matter jurisdiction. As alleged in his Complaint, Plaintiff seeks tort claim damages for the loss of [legal] property alleged to have been confiscated and destroyed by a BOP official while Plaintiff's cell was subjected to a search. The undersigned finds that Officer Booth, the BOP official alleged to have searched and taken the Plaintiff's property, is properly considered a "law enforcement officer" under [Section] 2680(c); thus, when the official allegedly searched and confiscated Plaintiff's property, the property was deemed detained under [Section] 2680(c). Accordingly, the exception of [Section] 2680(c) to the waiver of sovereign immunity applies, and there has been no showing that the government has waived sovereign immunity to this claim.

<u>Manning v. Booth</u>, supra at *5.

Since the Government has retained its sovereign immunity under Section 2680(c), we find that we are without jurisdiction to consider the Plaintiff's FTCA claim.

The Government has also argued that the Plaintiff's FTCA claim is time barred, under Title 28 U.S.C. 2401(b), which requires a FTCA claimant to begin his action

within six (6) months from the date upon which the final denial of the claim to the agency was mailed.  See <u>Sterling v. United States</u>, 985 F.2d 411, 412 (8th Cir. 1993). Specifically, the Record reflects that the notice of the BOP's final denial of the Plaintiff's FTCA claim was mailed to the Plaintiff prior to March 10, 2004.  <u>Buege Decl.</u>, at Exh. D,[10] and that the Plaintiff did not file his Complaint until August 26, 2004.  The Plaintiff concedes that he did not file his Complaint until after the six (6) month time period had elapsed, but he urges that his failure to timely file was a result of efforts by the BOP, and staff persons at FMC-Rochester, to intentionally withhold requested information from him.

"Exceptional circumstances" may justify the equitable tolling of the FTCA's limitations periods.  See, <u>Motley v. United States</u>, 295 F.3d 820, 823 (8th Cir. 2002), citing <u>Nicollai v. United States Bureau of Prisons</u>, 4 F.3d 691, 693 (8th Cir. 1993). However, the Plaintiff has not made any showing to support his assertions that BOP officials deliberately obstructed his ability to file a timely Complaint, especially considering that the Plaintiff's third, and final FOIA request, was not submitted until May 13, 2004 -- some two (2) months after his receipt of the FTCA denial letter.

---

[10]It appears that the denial letter was sent on either March 3, 2004, or March 8, 2004, but the Exhibit which identifies the actual date, upon which the denial letter was mailed, is not clearly legible.  See, <u>Buege Decl.</u>, at Exh. D.

Furthermore, the Plaintiff has not established that the responses to either of the two previous FOIA requests -- which were each more narrow than the third -- or any of his requests to the staff at FMC-Rochester, were improper.   Accordingly, it would be inappropriate to toll the statute of limitations since, even assuming that the requested information was necessary to the Plaintiff's filing of his Complaint, the information sought could have been obtained through a "timely diligent inquiry."   See <u>Motley v. United States</u>, supra at 824 ("To toll the statute of limitations because of a plaintiff's ignorance of the defendants' federal employee status, plaintiff 'must at the very least show that the information **could not** have been found by a timely diligent inquiry.'"), quoting <u>Gonzalez v. United States</u>, 284 F.3d 281, 291 (1st Cir. 2002)[emphasis in original].   Therefore, while we conclude that we are deprived of jurisdiction by the reservation of sovereign immunity under Section 2680(c), we further conclude that, even if such immunity had been effectively waived, the Plaintiff's FTCA claim would still be time barred by Section 2401(b).   Accordingly, we recommend that the Defendant's Motion for Summary Judgment, as to the Plaintiff's FTCA claim, should also be granted.

NOW, THEREFORE, It is –

RECOMMENDED:

1.      That the Defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment [Docket No. 23] be granted.

2.      That the Plaintiff's Complaint be dismissed with prejudice.


Dated: August 15, 2005                 s/Raymond L. Erickson
                                       Raymond L. Erickson
                                       UNITED STATES MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**September 1, 2005**, a writing which specifically identifies those portions of the

Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right

to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

- 30 -

transcript of that Hearing **by no later than September 1, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.